[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11290
The parties were married in Ansonia, Connecticut, on December 30, 1972. They have one child born to the marriage, a daughter, who has since reached her maturity and is a student at the University of Massachusetts. The couple separated in June of 1999, and since July 1999 the husband has been voluntarily paying $150 per week to the wife in accordance with a stipulation of the parties.
The defendant husband ("husband") is fifty-three (53) years of age and has worked as a warehouseman at Pitney Bowes in Shelton for the past twelve to thirteen years. He earns $43,300 per year. There is some question as to whether or not he fairly reported his overtime earnings on his financial affidavit. Previously he had worked for the Olin Corporation. In fact, at one point early in the marriage, he worked two additional part-time jobs washing trucks at SNET and janitorial work at the Derby railroad station. In addition, through the wife's contacts at her employer, he obtained occasional jobs repainting apartment interiors prior to occupancy by the new tenants. He is in apparent good health. His formal education ceased when he left high school after his junior year. He currently resides in a small apartment in Derby. He has modest retirement benefits through both his past and current employers. Also, he and his wife are currently covered under his medical and dental plans at his current place of employment. He has an outstanding Worker's Compensation case which has been pending since 1994, but for which there was no testimony as to value.
The plaintiff wife ("wife") is fifty-two (52) years old and has been employed as a bookkeeper at Haddad Family Associates in Ansonia for the past fifteen years, where she earns $18,200 per annum. She receives a modest Christmas bonus annually, and from time to time has received other small payments. In fact, like the husband, she has worked all through the marriage with the exception of the two weeks prior to birth of their daughter and thereafter for a short period of time until the child was three or four years old. In addition, for some time after they were married, the couple lived in the wife's aunt's house. The rental was below market, and the aunt paid her $500 per month to perform cleaning as well as other chores and errands for her. She is in apparent good health and has two years of post high school education. She resides in the marital home located at 16 North Coe Lane, Ansonia, Connecticut. Throughout the marriage, the wife managed the family finances. In fact, if she is to be faulted at all, the Court believes that she overemphasized savings and financial concerns, and that the couple had few recreational outlets. The husband testified that he would give her his weekly paycheck after taking out between $60 and $80 for his spending money. Both parties have worked exceptionally hard, in both full and CT Page 11291 part-time employment outside the home, in addition to the wife's child rearing and homemaker duties. The wife testified that she brought $15,000 to the marriage.
The parties are of limited means, their principal asset being the family home located at 16 North Coe Lane, Ansonia. This they purchased in 1982 for $68,000 with a down payment of between $55,000 and $58,000. Both parties believe the fair market value to be $145,000. There is a small mortgage with a balance of between $13,000 and $14,000. They each received modest inheritances, and the wife received numerous gifts from her family during the marriage which were used for the benefit of the parties. The wife testified that she received an inheritance from her aunt in 1988 amounting to between $16,000 and $17,000. There was disputed testimony as to the size and disposition of the husbands' inheritance from his mother. The wife testified that the husband received $10,000 from the sale of his mother's home and only gave her $2500 to bank.
There are modest savings in various banks, as well as bonds and mutual finds totaling approximately $35,000. These finds are being held by the wife. In July of 1999, the husband withdrew $12,000 from family funds by mutual agreement, with the understanding that this sum would be accounted for in the final division of assets. In addition, the parties have stipulated that certain bank accounts and savings bonds currently in the wife's name, amounting to approximately $58,000, belong to their daughter. The wife testified that a small amount of funds are being held in an account with the wife for her mother's benefit, and that the wife has a small Christmas Club account. She is also holding the parties' 1999 income tax refund amounting to $1126. In addition, the husband has retirement accounts with his past and present employer valued at approximately $46,000. The wife has an annuity with a value of approximately $27,000. The husband has left a $900 security deposit with his landlord. He drives a 1995 Honda worth $9000 and is debt free. The car was purchased with $3000 from the wife's brother and family funds for the balance. She drives a 1984 Buick Riviera, also debt free. They have modest debt, including miscellaneous credit cards held by the wife amounting to approximately $1000 and, the husband's (with his brother) loan from First Union with a balance of $3800.
The marriage has been in trouble for some time. The wife testified clearly that the marriage broke down due to the husband's gambling and bad temper. There was substantial testimony about the husband's bad temper, several notable displays being described, from name-calling to throwing of objects, which behavior became progressively worse during the last ten years. In addition, while it may well have started as recreational, it is apparent to the Court that the husband has had a serious gambling addiction for more than two decades. The wife testified CT Page 11292 that, although she has occasionally played the slot machines, she does not like gambling. At first, the husband seemed to be able to manage it, however, as the problem worsened, and his wife repeatedly expressed her displeasure, he turned to deceit and concealment. In fact, he testified that one reason that he concealed these activities was that he was "scared of his wife." The husband testified that he spent between $1000 to $2000 per year gambling, however, from other testimony and evidence it is quite clear that he spent far in excess of these sums. He used multiple credit cards to make cash withdrawals for OTB betting. He even went so far as to have his mailing address changed so that his wife would not see the bills. The wife testified that he even stopped giving her his pay stubs so that she would be unable to tell if he had received overtime pay. In addition, he testified that he borrowed sums to loan to his brother and others without the knowledge or consent of the wife. The husband, refused, in spite of repeated pleas by his wife, to stop the gambling and get help for his temper, until it was too late. For instance, he only went to counseling after she obtained a restraining order. However, he testified, and the Court believes sincerely, that he has made several serious last-ditch efforts to save the marriage, including, inter alia, participation in the Integra Program at Pitney Bowes, counseling at the St. Paul's Society, a consultation with a psychiatrist regarding depression, as well as attendance at Gambler's Anonymous. He also testified that he has lost forty pounds. From the wife's standpoint, she felt that things had gone too far and that she was "not willing to take a chance." Moreover, she feels strongly that were it not for the thousands of dollars spent by the husband, that they "would have done better" financially.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-40, 46b-51, 46b-62, 46b-63, 46b-81, and 46b-82
of the Connecticut General Statutes, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that the husband is primarily at fault, in that his temper, in part, but that his uncontrolled gambling habit was the principal cause of said CT Page 11293 breakdown.
 4. That the fair market value of the jointly owned real estate at 16 Coe Lane, Ansonia, Connecticut, is $145,000.
 5. That taking into account the work history of each of the parties and the homemaker functions performed by the wife, from an individual standpoint, both contributed equally to the marriage. However, taking into account the contributions of the wife's, through gifts, loans, and inheritance, as well as the funds that the wife brought to the marriage, and the obviously negative impact that the husband's gambling had on the accumulation of marital assets, the Court finds that it would be equitable to award the wife a disproportionate share of those marital assets.
 6. That the husband received the sum of $12,000 from marital assets in July 1999, and that it would be equitable to further adjust the division assets by this sum.
 7. That the assets currently held by the wife for the benefit of the daughter and her mother as set forth on her financial affidavit are not marital funds subject to division.
 8. That the weekly income as set forth on the husband's financial affidavit understates his income by approximately $88 per week in that he receives overtime compensation in addition to his base income.
 9. That the Court makes no finding as to the value of the husband's pending Worker's Compensation claim, insufficient evidence having been presented by the parties to make such a determination.
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved on CT Page 11294 the grounds of irretrievable breakdown, and they are each hereby declared to be single and unmarried.
 2. Commencing September 29, 2000, and weekly thereafter, the husband shall pay to the wife the sum of $135 as and for periodic alimony, until the death of either party or the remarriage of the wife, whichever shall sooner occur. The foregoing notwithstanding, either party may petition the Court for a modification at such time as either or both commence to receive Social Security and/or retirement benefits, or age sixty-five, whichever shall sooner occur.
 3. The husband shall maintain his existing group term life insurance and shall name the wife as beneficiary thereof for so long as he has an obligation to pay alimony under the terms of this decree, and so long as it shall continue to be an incident of his employment and available at a reasonable premium.
 4. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law, and the wife shall be responsible for any premiums therefor.
 5. As to the jointly-owned real estate at 16 North Coe Lane, Ansonia, Connecticut, within thirty (30) days from the date hereof, the husband shall convey his interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the wife shall have exclusive possession of the real estate, subject to the existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. The wife shall pay to the husband the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or CT Page 11295 the obtaining of new or additional financing, or five (5) years from the date of this Memorandum of Decision, whichever shall sooner occur The wife shall execute a simple Promissory Note to the husband containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of her default, and which shall not bear interest if paid on or before the end of such five year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be executed simultaneously with the delivery of the Quit Claim Deed to the wife. The wife shall use her best efforts to refinance the existing mortgage/home equity line and/or otherwise eliminate any obligations of the husband thereunder within five (5) years from the date of this Memorandum of Decision.
 6. The Retirement accounts and annuities shall be divided as follows:
A. As to the Transamerica Life and Annuity:
 Effective as of the date of this Memorandum of Decision, the Transamerica Life and Annuity plan entitled "First Select Annuity" shall be divided equally by the parties. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the division of the annuity.
B. As to the Olin Corporation Pension Plan:
 Effective as of the date of this Memorandum of Decision, the vested benefit of the Olin Employees Pension Plan ("Plan") of the husband through his former employer shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by counsel for the husband, 50% to the husband and 50% to the wife. Unless the parties agree otherwise, any retirement benefit shall be paid in the form of a joint and survivor CT Page 11296 annuity. The wife shall be entitled to one hundred (100%) of any survivor benefit. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
C. As to the Pitney Bowes 401(k) Plan:
 Effective as of the date of this Memorandum of Decision, the then balance of the Pitney Bowes 401(k) Plan ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by counsel for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
D. As to the Pitney Bowes Pension Plan:
 Effective as of the date of this Memorandum of Decision, the then accrued and vested benefit of the Pitney Bowes Pension Plan ("Plan") of the husband through his current employer shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by counsel for the husband, 50% to the husband and 50% to the wife. Unless the parties agree otherwise, any retirement CT Page 11297 benefit shall be paid in the form of a joint and survivor annuity. Any pension benefit attributable to the husband's employment subsequent thereto shall accrue solely to the benefit of the husband, including any additional survivor benefits. The wife shall be entitled to one hundred (100%) of that portion of any survivor benefit attributable to the husband's benefit under the Plan vested and accrued as of the date of this Memorandum of Decision. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
7. Personal property shall be divided as follows:
 A. The home furnishings shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
 B. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 C. The following items shall belong exclusively to the husband: security deposit in the amount of $900 and his Credit Union balance.
 D. The following items shall belong exclusively to the wife: Christmas Club account and her checking account balance at First Union.
 E. The joint income tax refund in the amount of $1126, together with any accrued interest, shall be divided equally by the parties. The wife shall deliver to the husband his share within seven (7) days from the date of this Memorandum of Decision.
 F. The husbands' pending Worker's Compensation claim, whether paid in the form of an annuity or a lump sum or a combination thereof, shall be the sole property of the husband. However, the receipt of any such benefit by the husband shall create a rebuttable presumption of a substantial change of circumstances, and the wife shall, at her option, have the right to seek a modification of any pending alimony order of this Court.
 G. The husband shall be entitled to the First Union Certificates of Deposit numbered #267362040189486 (balance approx. $5277.13) and #267362040183994 (balance approx. $5364.62). All other joint bank accounts, CD's, bonds, and mutual funds, shall be the sole property of the wife.
 8. The parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. Specifically, the husband shall be liable for the balance of the debt to First Union, and the wife shall be liable for the credit card balances for the Fleet, Chase, and Discover Cards.
 9. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
 10. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362
C.G.S in order to secure the payment of the alimony order.
THE COURT
SHAY, J. CT Page 11298